Michael T. Anderson
P.O. Box 7644
Missoula, MT, 59807 [1]
Email: ma4426535@gmail.com

Plaintiff, pro se

# UNITED STATE DISTRICT COURT FOR THE DISTRICT OF MONTANA

## MISSOULA DIVISION

| | |
|---|---|
| MICHAEL T. ANDERSON, | Case No. CV 23-75-M-DLC |
| Plaintiff, | |
| VS. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| MONTANA DEPARTMENT OF PUBLIC HEALTH AND HUMAN SERVICES; Charlie Brereton, in His Official Capacity as the Director of Department of Public Health and Human Services; | **JURY TRIAL DEMANDED** |
| MISSOULA HOUSING AUTHORITY; Sam Oliver, in His Official Capacity as the Executive Director of the Missoula Housing Authority, | |
| Defendant. | |

---

[1] This address is for caption purposes only. I please request that any documents pertaining to this case be served upon me via the email address in the sender's caption of this document, thank you.

**COMES NOW**, Plaintiff, Michael T. Anderson, in pro se, and for his Complaint against Defendants Montana Department of Public Health and Human Services and Missoula Housing Authority, alleges as follows:

## INTRODUCTION

(1)     For over fifty years now the U.S. Supreme Court has required that welfare recipients receive some form of due process and a right to be heard before being denied such benefits. In fact, the U.S. Supreme Court has ruled that recipients have a "*property interest*" in these welfare benefits should they qualify for them per the legislation authorizing these benefits, and that the government must provide some form of due process before denying such welfare benefits to the recipient.

(2)     The U.S. Department of Housing and Urban Development (hereafter "HUD") has determined that certain funds under their control and control of the states through Grants disseminated by HUD to these states can be distributed in any manner they choose contrary to the legislation authorizing such funds. Furthermore, neither does HUD require nor do the states in control of these housing funds have to provide any due process in the granting or denying of these housing benefits to a qualified Applicant for these benefits.

(3)   Even the most basic due process would require that an Applicant for government benefits be at least notified that they did not qualify and would not be receiving these government benefits, even if the notice did not contain an explanation as to the reason for denial of these benefits. In this instant case, an Applicant for housing benefits is only contacted if they should qualify for these housing benefits. If you do not qualify for these government housing benefits you will not hear from anybody involved in the dissemination of these benefits. How long does an Applicant have to wait before they can conclude that they do not qualify for these housing benefits; 1 month, 3 months, 6 months, or 1 year?

(4)   Defendants, the State of Montana, and the Missoula Housing Authority are disseminating these housing benefits in an arbitrary and capricious manner and are further failing to provide any due process in which to object to this illegal dissemination and/or Applicant's denial of such housing benefits, and subsequently are denying Plaintiff of his Fourteenth Amendment and Article II, Section 17 of the US and Montana Constitutions right to due process.

(5)   Therefore, this lawsuit seeks a declaration and injunction against Defendants State of Montana, and the Missoula Housing Authority, policy, and practice of denying Plaintiff due process of at least a Notice Granting or Denying of these housing benefits and an opportunity to be heard in the future.

**(6)** Plaintiff also seeks a preliminary and permanent injunction restraining Defendants from acting in furtherance of any policy, practice, or custom that violates Plaintiff Fourteenth Amendment and Article II, Section 17 of the US and Montana Constitutions' right to due process for these housing benefits in the future.

## JURISDICTION AND VENUE

**(7)** This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, and 1343(a)(3). This suit is authorized by 42 U.S.C. § 1983 and Article II, Section 18 of the Montana Constitution. This Court has jurisdiction to grant both declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

**(8)** Venue is proper in this court pursuant to 28 U.S.C. § 1391(b).

## PARTIES

**(9)** Plaintiff Michael T. Anderson (hereafter "Plaintiff") is an individual and at all times alleged resides in Missoula County, Montana, and is a homeless person.

**(10)** Defendant Charlie Brereton is the Director of the State of Montana Department of Public Health and Human Services (hereafter "DPHHS") pursuant to § 2-15-2201, Montana Code Annotated, 2021. DPHHS is a recipient of funding

from HUD for housing the homeless in Montana in the form of Emergency Solutions Grants, Rapid Rehousing Funds and distributing these housing benefits to the various subrecipients, e.g., Missoula Housing Authority. He is sued in his Official Capacity.

(11)   Defendant Sam Oliver is the Executive Director of the Missoula Housing Authority (hereafter "MHA"). MHA is a subrecipient of funding from DPHHS for housing the homeless in Montana in the form of Emergency Solutions Grants, Rapid Rehousing Funds. He is sued in his Official Capacity.

## FACTUAL ALLEGATIONS

(12)   To address the homeless crisis in the United States of America (hereafter "US") over the past 30 years the Senate, Congress, and various presidents have signed into law various forms of legislation to address this crisis with first and foremost being the *McKinney-Vento Homeless Assistance Act of 1987.*

(13)   In 2009, the McKinney-Vento Homeless Assistance Act of 1987 was amended by the *Homeless Emergency Assistance and Rapid Transition to Housing* (HEARTH) Act of 2009. This legislation is identified as "*The McKinney-Vento Homeless Assistance Act As amended by S. 896 The Homeless Emergency*

*Assistance and Rapid Transition to Housing (HEARTH) Act of 2009*" and is available at HUD's website. [2]

**(14)** Contained in the HEARTH Act are "*Emergency Solutions Grants*" (hereafter "ESG") that have a component entitled "*Rapid Rehousing Funds.*" Rapid Rehousing Funds can be used to house a homeless individual and/or family for up to 24 months.

**(15)** To be qualified for Rapid Rehousing Funds all one must be is homeless as described in *Section 103 of 42 USC § 11302- General Definition of Homeless Individual*. The Plaintiff is homeless as described in Section 103 of 42 USC § 11302 and has been since 2016.

**(16)** In late 2022, Plaintiff visited the Hope Rescue Mission in Missoula and was entered into the Missoula Coordinated Entry System (MCES). In early 2023, Plaintiff telephoned a couple months ago the Hope Rescue Mission and confirmed that he was entered into MCES.

**(17)** The MHA advertises on its website that it has an "*Emergency Housing Voucher program with 16 special purpose vouchers*". The MHA website

---

[2] Plaintiff has a copy of this legislation that he downloaded from HUD's website. Nothing in this legislation authorizes HUD and/or Defendants to use these funds in the manner that Defendants are utilizing these funds at current. Furthermore, nothing in this legislation authorizes HUD and/or Defendants to deprive an Applicant of any right to due process in the obtaining these benefits. The deprivation of due process involving these federal funds for housing are a direct result of Defendants policies.

6

goes on to say that in order to be considered for one of these Emergency Housing Vouchers you must be entered into MCES. The website goes on to say "*If you believe you may be eligible you must contact 2-1-1 or another MCES access point, the YWCA, or your rapid re-housing program. You cannot directly apply to MHA.*" *See Attached Exhibit Identified as "Exhibit A."*

(18) The Plaintiff's position is from this statement requiring your entry into MCES and "*You cannot directly **apply** to MHA*" (Emphasis added) that entry into MCES constitutes an application for these ESG, Rapid Rehousing Funds.

(19) It is further Plaintiff's position that since this constitutes an application for government housing benefits; he is entitled to Notice Granting or Denying these benefits, and if denying the benefits, the basis for that denial that is consistent with federal law.

(20) Plaintiff made every attempt to obtain these Rapid Rehousing Funds and to resolve this legal issue through the Defendants themselves and HUD to no avail. The only response that he received was two "form letters" from HUD advising him that the State of Montana was responsible for the program "operationally." *See Attached Exhibit Identified as "Exhibit B."*

## CLAIM FOR RELIEF

## COUNT I.

### THE DEFENDANT'S POLICY OF NOT PROVIDING DUE PROCESS OF GRANTING OR DENYING THESE HOUSING BENEFITS VIOLATES THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION TO MEANINGFUL NOTICE AND OPPORTUNITY TO BE HEARD.

Plaintiff hereby incorporate paragraphs (1)- (20), above.

**(21)** The U.S. Government has created a program through the HEARTH Act that helps homeless people with housing. The requirement or qualifications to obtain assistance or qualify for this program is articulated in *Section 103 of 42 USC § 11302*.

**(22)** The Plaintiff qualifies under *Section 103 of 42 USC § 11302* for these federal housing benefits; subsequently, he has a *"Property Interest"* in these federal housing benefits per *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972). *"Thus, the welfare recipients in Goldberg v. Kelly, supra, had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them." Roth*, Id. at 577.

**(23)** This federal-created right is protected against arbitrary loss by the Due Process Clause of the Fourteenth Amendment. Accordingly, Defendants' failure to establish minimal due process procedures in the dissemination of these federal

housing benefits violates Plaintiff's right to due process as required by the Due Process Clause of the Fourteenth Amendment and Article II, Section 17 of the Montana Constitutions. *See Goldberg v. Kelly, 397 U.S. 254 (1970).*

(24)   At a minimum, procedural due process requires that the State provide the Applicant a notice granting or denying these housing benefits and an opportunity to be heard before being denied a protected property interest. *See Mathews v. Eldridge, 424 U.S. 319, 335 (1976).*

(25)   Defendants' interference with Plaintiff's fundamental rights to due process is unconstitutionally arbitrary and capricious, and is being done with deliberate indifference. Accordingly, relief is sought pursuant to 42 U.S.C. § 1983.

### COUNT II:
### THE POLICY OF DEFENDANTS VIOLATES PLAINTIFF'S SUBSTANTIVE DUE PROCESS RIGHT TO OBTAIN AND UTILIZE HIS PROPERTY INTEREST IN THESE FEDERAL HOUSING BENEFITS.

Plaintiff hereby incorporate paragraphs (1)- (25), above.

(26)   Plaintiff has fundamental rights under the Fourteenth Amendment to the United States Constitution to obtain and utilize these federal housing benefits because he qualifies for them and subsequently has a property interest in them.

(27)   Defendants are violating Plaintiffs' substantive due process rights by arbitrary and capriciously depriving Plaintiff of his fundamental rights to acquire

and utilize a property interest that he would have in these federal funds for housing.

(28)    Defendants' interference with Plaintiffs' fundamental rights to due process is unconstitutionally arbitrary and capricious, and is being done with deliberate indifference and does not serve any legitimate state interest or purpose. Accordingly, relief is sought pursuant to 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment:

A.    Declaring that Defendants by not providing due process to Plaintiff in the dissemination of ESG, Rapid Rehousing Funds in Montana violates the Fourteenth Amendment and Article II, Section 17 of the US and Montana Constitutions;

B.    Preliminarily and permanently enjoining Defendants and their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them or under their direction or control from failing to issue Plaintiff a Notice Granting or Denying an application for ESG, Rapid Rehousing Funds, and if denying the housing benefits, the basis for that denial that is consistent with federal law.

C.   Awarding Plaintiff his costs, and expenses; and

D.   Granting such other relief as the Court may deem just and proper.

Respectfully submitted,

Dated: June 22nd, 2023

Michael T. Anderson

Plaintiff, pro se